## GARDNER *vs.* HEARTT.

Where the plaintiff, the defendant and several others, were parties to a written contract, by the provisions of which they were together to engage in the removal of earth from the land of the defendant to lands belonging in common to all the parties to the contract, for the purpose of raising and filling up the same; and after proceeding in the execution thereof, the plaintiff, with the assent of the other parties, sold and conveyed his interest in the common lands to the defendant, subject to the contract; and subsequently the defendant and the other remaining proprietors continued the removal of the earth from the defendant's land to said common property pursuant to such contract, and in so doing, negligently undermined a hill on said defendant's land, and thereby caused a *slide* therefrom which covered and injured *other* lands of the plaintiff; *held,* that the fact of the plaintiff having originally been a party to the contract for the removal of such earth did not preclude him from recovering, in case, for such injury.

· CASE, tried at the Rensselaer circuit in January, 1843, before WILLARD, C. Judge. The declaration stated that the plaintiff was the owner of several lots lying on the east side of Hill-street in the city of Troy, and that the defendant was the owner of a hill or part of a hill called Mount Ida, lying east of said lots; that the defendant caused the hill, or the part thereof owned by him, to be undermined, and the same was so carelessly, negligently and improvidently done, and the dirt was so carelessly and negligently removed, &c. as to cause said hill to slide down upon the plaintiff's lots, &c. and thereby greatly injured the same, &c. The defendant pleaded not guilty.

On the trial the plaintiff proved that three building lots, 50 feet by 120, on the east side of Hill-street, were conveyed to him in 1825; that the defendant was the owner of the hill; that one *avalanche* or slide occurred in 1837, and another (the one complained of) in the winter of 1843, and that by the latter occurrence the plaintiff's lots were covered with earth, &c. and greatly injured; that in February, 1842, a person claiming an interest in one of the lots under the plaintiff gave notice to the defendant not to dig into the hill as it endangered his property, and that the defendant said he would dig as much as he pleased.

Evidence was then given tending to shew that the slide was caused by digging into the hill, and that the same was done under the direction of a company called the meadow company, of which the defendant was a member. It appeared that for some time prior to and up to the time of the slide of 1843, the hands of the company had been taking dirt from the hill to fill up certain lots south of Washington square.

The defendant gave in evidence a contract, dated September 25th, 1834, between the plaintiff and defendant and three other persons; by the provisions of which certain meadow lands in Troy, lying south of Washington square, were to be purchased for the benefit of the five parties, and upon such purchase being made, the defendant was to allow earth to be taken from the hill to fill up the meadow lots so purchased, which enterprise was to be conducted by and for the benefit of the five individuals who were parties to the contract; and it appeared that the excavation which caused the injury complained of was done in the course of the execution of the contract. After this evidence had been given, the judge intimated that the plaintiff could not recover as the evidence stood. The plaintiff then offered in evidence a deed from himself and his wife to the defendant, dated February 6th, 1836, for one undivided fifth part of the meadow land referred to in the contract of September 25, 1834. It contained a covenant on the part of the plaintiff that he had done no act to affect the title to the premises conveyed, except by his covenants and agreements with the four other proprietors parties to the contract before mentioned, and it stated that the deed was subject to that contract. He also offered to shew that the sale of his interest to the defendant was made with the assent of the other parties to the aforesaid contract, and that at the time of giving said deed there was no danger of the sliding of the earth on account of their operations, and that no slide would have occurred after that of 1837, but for the undermining of the hill, and that the injury complained of was occasioned by what was done subsequently to the plaintiff's conveying his interest by said deed. The defendant's counsel objected to the evidence so offered, and the objection was sustained by the

judge, who thereupon directed a nonsuit to be entered.  The defendant's counsel excepted.

*D. Gardner*, in person, moved to set aside the nonsuit.

*J. Pierson*, for the defendant.

*By the Court*, BEARDSLEY, J.    I think the evidence offered by the plaintiff, and which the judge refused to receive, was proper, and ought not to have been excluded.

In 1834, the plaintiff and defendant, with three others, entered into a contract which contemplated the purchase, for the benefit of said five persons, of a piece of land called the meadow ; and which contract provided that in case the purchase was made, the meadow should be filled up by removing earth from the hill then owned by the defendant, at the expense of the several owners of the meadow.    The purchase seems shortly thereafter to have been made ; and the evidence given tended to show that the slide of the hill, of which the plaintiff complains, was occasioned by the removal of earth in 1842, and which was taken away by the defendant and the other owners of the meadow for the purpose of raising that piece of ground to its proper height, as is provided in the contract of 1834.    In this state of the case the plaintiff offered to prove that in 1836 he sold and conveyed all his right and title to the meadow land to the defendant, the same being done with the consent of the other parties in interest : that there was then no danger of a slide from the hill, but that the one which occurred in 1843, and did the injury complained of, was caused by undermining the hill subsequently to the time when the plaintiff conveyed his interest to the defendant.    This evidence the judge refused to receive; and the plaintiff excepted thereto.

  It was argued that the plaintiff was a party to the act complained of, and if it was negligent, the law will give him no redress.   He was one of the parties who entered into the contract of 1834, which provided for a removal of earth from the hill to fill up the meadow ; and this excavation was for that

purpose, and was in fact done under that contract. Hence it was urged, that although the plaintiff might have sold out in 1836, as he offered to show, still, being an original party to the contract under which the earth was removed, the law would hold him to be a party in fact to the act of removal, and he must abide by all the consequences which would follow from his participation in the negligence complained of. On this ground the exclusion of the evidence is attempted to be justified.

The general principle certainly is, that the law will not allow any one to recover a compensation for an injury resulting from a negligent act to which he was himself a party. (*Cook & Cook* v. *The Champlain Transp. Co., ante, p.* 91.) But how could this plaintiff have been a party to the act here complained of? He offered to show, not only, that in 1836 he conveyed all his interest in the meadow land to the defendant, but that the excavation which produced the injury was made long subsequently to that conveyance. Had this been established, the plaintiff could in no sense have been a party to the act complained of. It would not have been done by him, or for his benefit, but by the person to whom he had transferred all his right, with the assent of the other parties in interest. As they were the persons who were interested in what was to be done, and as the plaintiff did not interfere, upon what principle can it be said that the law holds him to be a party? I confess I know of none on which this can justly be urged.

It is true, his contract of 1834 contemplated a removal of earth from the hill to the meadow. That was a legal contract, and we cannot infer that the parties designed to execute it in a negligent manner. Had the plaintiff continued a party in interest at the time when the acts of negligence occurred, it may well be that he could not have recovered. The excavation would have been for his benefit, and by persons who were in his employ, and to be paid in part by him. Their acts might have been his, and he must have abided by all the consequences. But the facts were otherwise. The plaintiff, as he offered to show, parted in 1836 with all his interest to the defendant; and certainly, as between these parties, the law will not, upon what is

contained in the contract of 1834, impute to the plaintiff the negligence of the defendant in 1842, although it may have occurred in doing what was required to be done by that contract. The evidence offered was therefore proper. It would have shown that the alleged negligent acts were not to be imputed to the plaintiff; and of consequence redress for an injury thus sustained by him could not be denied on that ground. For this reason the nonsuit should be set aside, that the plaintiff, if he has been injured by the defendant's negligence, may recover the damages sustained.

New trial granted.