# THE METROPOLITAN RAILROAD COMPANY
## *v.*
## COLLINS.

---

### EVIDENCE; RES GESTAE.

1. In an action against a street railway company to recover damages for personal injuries alleged to have been caused by the sudden starting of defendant's car, whereby the plaintiff was thrown to the ground, the declaration by defendant's transfer agent at a point of intersection of two of defendant's lines, made from two to five minutes after the accident occurred, that the conductor of the car on which plaintiff was a passenger "would get into trouble," and that "he started without my authority," is not admissible as part of the *res gestae*, the declarant not being an actor in the occurrence, but occupying to the defendant the relation of any other by-stander, and his exclamation, though near in point of time, being narrative only of a past transaction.

2. The rule relating to the admissibility of evidence as part of the *res gestae* is to be more strictly construed in cases where the declarations of agents or employees of a defendant are sought to be introduced against him, and especially where the declarant may be interested in exculpating himself from blame by inculpating another.

No. 105.   Submitted October 13, 1893.—Decided November 7, 1893.

HEARING on an appeal by the defendant from an order of the Supreme Court of the District of Columbia, holding a law term, overruling a motion for a new trial on bill of exceptions in an action for personal injuries.   *Reversed.*

THE COURT in its opinion stated the case as follows:

This is an appeal from a judgment rendered for plaintiff in an action for damages on account of an injury received by her while a passenger on defendant's horse cars.

The evidence on behalf of plaintiff tends to show that she was in the act of stepping into the car at the corner of F and Ninth streets, which is a transfer point, when it was suddenly started, causing her to fall into the street; while that on behalf of defendant tends to show that she had taken her seat in the car, and then, without notice, had attempted to

get out just as the car had been started, thereby receiving the fall. The conflict in the evidence is irreconcilable.

Immediately after her fall plaintiff was carried into an adjacent drug store, where she received some treatment before removal to her home. On the trial, she called a witness to testify to a declaration made by defendant's "transfer agent." This witness said that he assisted in taking the plaintiff into the drug store, and that she saw the transfer agent in there "not more than a couple of minutes" afterwards, and heard him say, "He" (meaning the conductor) "would get into trouble," and "that he started without my authority." The defendant objected to this evidence, but the court held it admissible as part of the *res gestae*, whereupon defendant excepted.

The transfer agent was also called by the plaintiff, and said that he did not remember to have made the remark, but if he did, it was made on the street some "two or three or five minutes" after the car had gone. This was also objected to. The witness also said that he gave no order to start the car. The conductor, called by defendant, said that it was part of the transfer agent's business to start the car—i. e., to give the order therefor—but it was customary for the conductor to signal for starting when the agent was otherwise engaged, and that he did so on this occasion because the agent was then talking to some persons, apparently giving them information. It seems that the transfer agent stands upon the street at the intersection of another line and overlooks the transfer of passengers from one line to the other. It is not contended that the transfer agent was such an officer as that his declaration was admissible as an admission of the defendant corporation, and the sole question is—Was it competent as part of the *res gestae?*

*Mr. Nathaniel Wilson* for the plaintiff in error:

1. Statements made by the defendant's servant, a transfer agent at the corner of F and Ninth streets, relative to the conduct of another servant, the conductor, made, not during

the transaction which resulted in the injury to the plaintiff, but afterwards, and at another place, were wholly inadmissible as evidence of the defendant's negligence or as an admission of its liability.    If at the time and place mentioned, in respect of the transfer agent's statement, the conductor himself had made a distinct admission that the accident was caused by his negligence, such statement would have been irrelevant and inadmissible.    The accident itself was then a thing of the past, the injury was completed, the wrong sustained had been consummated, and all conversations as to how it occurred, whether between the conductor and the transfer agent, or the transfer agent and a third person, were mere narratives, incompetent to vary, qualify, or explain the act already done.    *Packet Company* v. *Clough*, 20 Wall., 528 ; *Railroad Co.* v. *O'Brien*, 119 U. S., 105 ; *Union Ins. Co.* v. *Smith*, 124 U. S., 425 ; Booth on Street Railway Law, Sec. 399 ; *Williamson* v. *Railroad Co.*, 144 Mass., 148 ; *Adams* v. *Railroad Co.*, 74 Mo., 553.    See also, *Whitaker* v. *Eighth Ave. R. R.*, 51 N. Y., 295 ; *De Soucey* v. *Manhattan R. R.*, 15 N. Y. Supp., 108 ; *Joslin* v. *Grand Rapids &c. Co.*, 53 Mich., 322 ; *Luby* v. *Hudson River R. R.*, 17 N. Y., 131 ; *Wormsdorf* v. *Detroit City*, 75 Mich., 472.

2. The verdict was against the weight of evidence and for excessive damages.    The appeal of the defendant from the order of the special term overruling the motion for a new trial, on the ground that the verdict was against the weight of evidence and the damages excessive, was pending in the Supreme Court of the District of Columbia in general term at the time this was created, and was transferred and is justiciable here under the provisions of the act of February 9, 1893.    In the case of *Metropolitan R. R. Co.* v. *Moore*, 121 U. S., 558, the Supreme Court of the United States held that an appeal would lie to the general term from a denial in special term of a motion for a new trial, made on the ground that the verdict was against the weight of evidence.    The jurisdiction possessed by the Supreme Court of the District in respect of cases transferred to this court under the pro-

·visions of the act of February 9, 1893, is possessed and is to be exercised by this court. Sec. 7, Act February 9, 1893. The order of the special term overruling the motion for a new trial finds and certifies that "all the testimony, as well that taken in behalf of the plaintiff as that taken in behalf of the defendant, is fully and truly set out in the bill of exceptions this day signed." The only evidence of negligence on the part of the defendant is found in the testimony of the plaintiff herself, and she is contradicted by the testimony of two competent and unimpeachable witnesses.

*Mr. S. S. Henkle* for the defendant in error.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The authorities, though not entirely, are mainly agreed in the statement of the general rule as to when evidence ceases to be objectionable as ·hearsay and becomes admissible as part of the *res gestae*. This rule is, that the declarations must be made by a party to the transaction, must grow out of it, serve to illustrate its character, and derive some degree of credit from it. They must be undesigned incidents of the very act in controversy; spontaneous emanations therefrom, and must not have force independent thereof, or be dependent for their effect on the credibility of the person making them.

The learned Wharton, whose authority is invoked on behalf of the appellee, says: "Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanations of, such act, and are not produced by the calculated policy of the actors." 1 Wharton Ev., Sec. 259.

In one of the leading cases relied on by appellee the rule is stated thus, after admitting the difficulty in formulating a rule applicable to all cases: "This much may, however, be safely said, that declarations which were the natural outgrowths of the act or occurrence in litigation, although not

precisely concurrent in point of time, if they were yet voluntarily and spontaneously made so nearly contemporaneously as to be in the presence of the transaction which they illustrate and explain, and were made under such circumstances as necessarily to exclude the idea of design or deliberation, must, upon the clearest principles of justice, be admissible as part of the act or transaction itself." *Railway Co.* v. *Buck*, 116 Ind., 566.

In passing, it may be said, that in that case the declarations were made by the deceased (whose administrator sued for damages for his injuries) to the conductor of the train immediately after he had pulled him from under the wheels of the car, and while suffering from wounds that caused his death within six hours.

It is quite generally agreed, also, that the declarations need not be made immediately, in point of time, but only so near as, with other circumstances, to show that the declarations were the spontaneous product of the act and illustrative of it only. But they are, on the other hand, not to be admitted when narrative merely of that which has occurred, no matter how near they may be connected in point of time therewith.

The great difficulty to be encountered lies in the application of the rule to the particular facts of each case. As a result, the different applications made in a multitude of cases where the question has arisen, have apparently made variations in, and exceptions to the general rule which they, in the main, profess to follow. It is this conflict of decided cases, and the resultant confusion of the principles of the rule, probably, which led Sir James Stephen to remark that " the term *res gestae* seems to have come into use on account of its convenient obscurity."

It would be an unprofitable task to review all of the cases cited on the briefs of counsel and others which have been examined in the consideration of this case. In every case in which declarations have been admitted as part of the *res gestae*, we think it will be found that they came either from

an injured or wounded person, or from the other actor or actors in the transaction. The rule will be found to have been relaxed in cases where the person injured was a child, and made the explanatory statements to the father or mother upon first meeting and while suffering from the injuries received. *City of Galveston* v. *Barbour*, 62 Tex., 172; *Augusta Factory* v. *Barnes*, 72 Ga., 217; or when made by an adult immediately after injury, and while suffering from wounds which shortly produced death, where, superadded to the improbability of designing statements being made in intense suffering, was the shadow of impending death, giving to the words almost the solemnity of a dying declaration. *Ins. Co.* v. *Mosley*, 8 Wall., 397; *Railway Co.* v. *Buck*, 116 Ind., 566; *Leahey* v. *Cass Ave. &c.*, *Rwy. Co.*, 97 Mo., 165; *Elkins v. McKean*, 79 Pa. St., 493; *Entwhistle* v. *Feighner*, 60 Mo., 214; see also *I. & G. N. R. R. Co.* v. *Anderson*, 82 Tex., 516. In this last case the court admitted that the rule had been carried too far in that State, and regretted that it felt bound by previous decisions.

Again, in criminal trials, the declarations of the deceased made immediately after the receipt of the mortal wound, giving the name of the slayer and sometimes the circumstances attending the act, have often been admitted. *Com.* v. *M'Pike*, 3 Cush., 181; *People* v. *Simpson*, 48 Mich., 474; *Kirby* v. *Commonwealth*, 77 Va., 681; *Hill's Case*, 2 Gratt., 594, and many others that might be cited. Sometimes, also, the declarations have been received where made by persons immediately after being robbed, descriptive of the persons and dress of their assailants. *State* v. *Horan*, 32 Minn., 394; *State* v. *Ah Loi*, 5 Nev., 99; *Lambert* v. *People*, 29 Mich., 71; *Driscoll* v. *People*, 47 Mich., 413.

In these cases where the rule has been most relaxed, the facts have appealed more or less strongly to the sympathy as being in the interest of justice, either in the redress of private or public wrongs. The rule has always been more strictly observed in cases where the declarations of the agents or employees of a defendant have been sought to be intro-

duced against him; these when admitted have been made very shortly after the transaction, with the evidences of the wreck and damage immediately around, and amid the excitement of trying scenes, as in *Hanover R. R. Co.* v. *Coyle*, 55 Pa. St., 396, a very often cited case. See also *McLeod* v. *Ginther*, 80 Ky., 399. But in a case where the declaration of the engineer of the wrecked train was made within a short time afterwards, and while at the place, it was held inadmissible, the court saying: " It is not to be deemed part of the *res gestae* simply because of the brief period intervening between the accident and the making of the declaration. The fact remains that the occurrence had ended when the declaration in question was made, and the engineer was not in the act of doing anything which could possibly affect it." *V. & M. R. R.* v. *O'Brien*, 119 U. S., 99. See also, *Williamson* v. *Cambridge R. R. Co.*, 144 Mass., 148 ; *Adams* v. *Hannibal &c.*, *R. R. Co.*, 74 Mo., 553 ; *Whitaker* v. *Eighth Ave. R. R.*, 51 N. Y., 295 ; *Railway Co.* v. *Becker*, 128 Ill., 545.

We think that the learned justice who tried this case below erred in the application of the rule to the facts in evidence when he admitted the declarations of the transfer agent as part of the *res gestae*. If the declarations offered had been made by the conductor of the car whose negligence, according to the plaintiff, caused the injury, the error would not be so clear; but the transfer agent was not an actor in the occurrence, and had nothing to do with it. If it be conceded that he saw the accident and knew its cause— which is the natural inference from his statement, if truly reported—yet it is clear that what he said, though near in point of time, was narrative only of a past transaction. It was not a spontaneous outburst incident to the occurrence or illustrative of any part of it.

This witness was not in the employ of the defendant at the time of the trial. He was in attendance as a witness, and was competent to testify to the cause of the accident, if in fact he did witness it, and knew anything of the cause of

plaintiff's injury.   He could not be made a witness in this indirect manner.

When it is considered also that this witness ordinarily started the cars himself, and might, therefore, have been interested in exculpating himself from possible blame by inculpating another, the reason for the exclusion of his declaration becomes stronger.   *Luby* v. *Hudson R. R. R. Co.,* 17 N. Y., 133.

The incompetency of this evidence may be illustrated by its consideration from another point of view.   Declarations that are strictly part of the *res gestae* are admissible as well for as against each party to the controversy.   Now, let us suppose that the declaration of the agent had been to the effect that plaintiff was negligent in attempting to alight from a moving car, and had been offered on behalf of de-defendant, would it be seriously contended that it ought to have been admitted as part of the *res gestae?*   We think not.

2. The conclusion that the court erred in admitting the declarations in this case is supported upon another ground equally as satisfactory as those above set forth.   The transfer agent, as to this transaction, occupied to the defendant the relation of any other by-stander.   Declarations of by-standers, though made amid all the excitement of the moment, have not been held competent in any case similar to this that has come under our observation.   It has no element in common with those cases, where, as in riots, unlawful assemblies and conspiracies for such purposes, the cries of the mob or crowd have been held competent as illustrating the motives and explaining the probable purposes of their leaders and inciters, as in Lord George Gordon's Case, and perhaps others.

In *Leahey* v. *Cass Ave. &c., Rwy. Co.,* 97 Mo., 165, where the declarations of the injured person were held competent as part of the *res gestae,* the cries of a woman by-stander made at the time of the injury were excluded.   In *Detroit & Milwaukee R. R.* v. *Van Steinberg,* 17 Mich., 99, the

statements of by-standers made at the time the train came in, that the bell was not being rung, nor the whistle blown, in which omissions the charge of culpable negligence was founded, were held incompetent.

In *Dwyer* v. *Continental Ins. Co.*, 63 Tex., 354, the trial court permitted evidence to be given to the effect that while the fire was raging, out of which the controversy grew, there was " talk of arresting all the clerks for complicity in the fire." This talk was in the presence and hearing of the plaintiff Dwyer, who afterwards became the assignee of the policy upon the burned goods, upon which the suit had been brought. The defense was that the goods had been set on fire by the procurement of the insured. The Supreme Court held this to be error, saying: " It was but the statement of what persons said who were present at the fire, which under no known rule of law was admissible. The parties making the declarations were not shown to have been so connected with the transactions, or with the persons whose interests seemed to be affected by them, as to make them admissible as part of the *res gestae.*"

3. It is insisted on behalf of appellee that the error in admitting this evidence was immaterial, because it could have had no effect, under all the circumstances, upon the jury. We cannot agree to this. The evidence was very equally balanced, and this additional evidence may, in all probability, have been sufficient to turn the scale in favor of the appellee.

4. It is unnecessary to consider the other assignment of error, which presents the question, that the verdict is against the weight of the evidence, for our consideration, either upon its merits, or upon the point whether this court, by the transfer of the appeal from the General Term, succeeds to its recognized power to reverse a judgment upon that ground.

*The judgment must be reversed, with costs to the appellant, and the cause remanded for another trial.*